# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-0534V
UNPUBLISHED

| | |
|---|---|
| ALEXANDRA MURRAY,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: July 6, 2020<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Injury (SIRVA) |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Jennifer Leigh Reynaud*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On April 12, 2018, Alexandra Murray filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered from a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on January 27, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of $67,130.08, representing $65,000.00 for actual pain and suffering, plus $2,130.08 for past unreimbursed expenses.

---

[1] Although this Decision has been deemed unpublished, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Relevant Procedural History

Approximately 16 months after this case was initiated, Respondent filed his Rule 4(c) report on September 5, 2019, conceding that Petitioner was entitled to compensation. (ECF No. 46). A ruling on entitlement was issued the next day. (ECF No. 47). In a status report filed the next month, Petitioner explained that prior to Respondent's concession, the parties engaged in settlement discussions, but could not reach agreement. (ECF No. 49). Accordingly, on October 21, 2019, a scheduling order was issued setting a schedule for the parties to file briefs on damages. (ECF No. 50). The parties filed their respective briefs (ECF Nos. 56 ("Br.") and 60 ("Opp.")). I subsequently proposed that the parties be given the opportunity to argue their positions at a motions hearing, at which time I would decide the disputed damages issues. (ECF. No. 62). That hearing was held on June 26, 2020,[3] and the case is now ripe for a determination.

## II. Relevant Medical History

A complete recitation of the facts can be found in the petition, the parties' respective pre-hearing briefs, and in Respondent's Rule 4(c) report.

In brief summary, Ms. Murray received the flu vaccine in her left shoulder on January 27, 2016 at a CVS Pharmacy in Tallahassee, Florida. Ex. 1 at 2-5; Ex. 2 at 121. Ms. Murray's medical history prior to vaccination is very significant in this case. Although Petitioner had no history of pain, inflammation, or dysfunction specific to her left shoulder, she experienced a serious motor vehicle accident about three years earlier, on March 23, 2013, in which she suffered a concussion, a fractured mandible, a displaced right elbow, and a fractured femur that required surgical repair. *See e.g.,* Ex. 2 at 89-116, 121; Ex. 3 at 1; Ex. 12 at 41- 45; Ex. 15 at 49; Ex. 32 at 2-3. She was also diagnosed and being treated for temporomandibular joint dysfunction ("TMJ"). Ex. 12 at 41-45, 70-73.

In addition, Ms. Murray is an equestrian, and has experienced several injuries associated with such activities. Thus, she suffered another concussion about one year after her car accident, on March 24, 2014, when a horse kneed her in the head. Ex. 2 at 121. And in September 2014, Petitioner sprained her ankle and bruised her toe when a horse "jumped up and landed on [her] [right] foot and stayed there for about 30 seconds." Ex. 2 at 86-88; Ex. 12 at 54-56.

Seventeen (17) days after vaccination, on February 13, 2016, Ms. Murray presented to an urgent care center with complaints of left shoulder pain since receiving the flu vaccine. Ex. 9 at 4-6. She rated her pain as a 10 on a scale from 1-10, without any loss of function. *Id*. Ms. Murray was prescribed oral prednisone, hydrocodone-acetaminophen, and ibuprofen. *Id*.

---

[3] At the end of the hearing held on June 26, 2020, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

2

Petitioner subsequently visited a sports medicine specialist on March 3, 2016, where she was diagnosed with infective bursitis, tendinitis, and impingement syndrome of the left rotator cuff, as well as left subacromial or subdeltoid bursitis. Ex. 2 at 71-73. An MRI performed in March 2016 confirmed the injury, and Ms. Murray was prescribed ice and heat therapy and was eventually referred to physical therapy ("PT"). *Id*. She began physical therapy on May 5, 2016, at which time she rated her left arm pain as severe, a 10 out of 10. Ex. 15 at 42-66. Concurrently, Ms. Murray sought chiropractic treatment from Dr. Louis D. Klionsky for treatment of her TMJ which was related to her prior auto accident as well as her shoulder injury. Ex. 12 at 75.

Petitioner attended a total of 22 chiropractic sessions between May and August 2016. *See generally* Ex. 12. She also attended five orthopedic specialist appointments, 15 physical therapy sessions, underwent an MRI of her left shoulder, an EMG/NCS of her left upper extremity, and received three therapeutic injections including an ultrasound guided corticosteroid injection (Ex. 2 at 65-66), a lidocaine injection (Ex. 16 at 1), and a cortisone injection. Ex. 2 at 54-56. However, during this time, Ms. Murray was also being concurrently treated for her injuries related to her prior automobile and horseback riding accidents, and the record is replete with instances where her medical visits were not exclusively intended to treat her SIRVA injury.[4]

By the time of Ms. Murray's last visit to an orthopedist, who saw her only once just shy of one year after her vaccination, Petitioner had been diagnosed with fibromyalgia. A pain specialist opined that her left upper-extremity symptoms were related to her chronic cervical pain that began after her 2013 auto accident. Ex. 3 at 9-11, 16-19, 60-63.

### III. The Parties' Arguments

#### a. Petitioner

Ms. Murray seeks an award in the total amount of $119,183.37, consisting of $115,000.00 as compensation for her pain and suffering, plus $4,183.37 for past unreimbursable medical expenses (a large portion of which Respondent contests). Br. at 12-15. To support her pain and suffering request, Petitioner stressed that her SIRVA injury significantly affected the quality of her life. *Id*. at 14. She explained that she received the flu vaccine at the beginning of her freshman year at Florida State University, where her focus at the time was on academics, friendships, a part-time job, exercise, and riding her horse. *Id*. She emphasized that horseback riding was an integral part of her life, but her SIRVA injury prevented her from riding and grooming her horse. *Id*.

During the hearing and in her brief, Petitioner discussed prior SIRVA cases that involved injured claimants with similar fact patterns, and thus argued that an award of $115,000.00 was reasonable and appropriate in light of such similar determinations. Br. at 17-18.

---

[4] See Opp. at 2-23.

### b. Respondent

Respondent maintains that a pain and suffering award of only $50,000 is appropriate, given the overall limited scope and nature of Ms. Murray's injuries. Opp. at 1, 24-28. Respondent argued that Ms. Murray's medical records reflect that she sustained a relatively minor SIRVA injury that required relatively little treatment. *Id*. at 25. Although Ms. Murray reported her vaccination-related pain in a prompt manner (thus underscoring its immediate severity), she only had four total orthopedic visits for her left shoulder pain – on March 3, 2016, June 14, 2016, July 8, 2016, and January 5, 2017. Her MRI did not reveal a rotator cuff tear, moreover, and she required only about fifteen PT sessions between May and November 2016. While Petitioner asserts that she was also receiving chiropractic care at this time for her left shoulder, she actually consulted Dr. Klionsky solely for her chronic TMJ symptoms. In fact, any treatment he provided for her left shoulder pain was incidental to what he provided for her TMJ and painful areas throughout her body. *Id*.

### IV. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages

for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

In *Graves*, Judge Merrow rejected the special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap, criticizing this as constituting "the forcing of all suffering awards into a global comparative scale in which the individual Petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, he found that pain and suffering should be assessed by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program, applying the statutory cap only thereafter. *Id*. at 595.

### V.    Appropriate Compensation in this SIRVA Case

#### a.  Awareness of Suffering

Awareness of suffering is not typically a disputed issue in cases involving SIRVA – and it does not appear to be disputed herein. Thus, based on the circumstances of this case, I find that Ms. Murray had full awareness of her suffering, and proceed to analyze the severity and duration of the injury.

#### b.  Severity and Duration of Pain and Suffering

With respect to the severity and duration of the injury, Ms. Murray's medical records and her affidavit provide a description of the pain she experienced throughout the duration of her injury. As noted, although she did not require surgical intervention, Ms. Murray nevertheless endured multiple rounds of PT sessions as well as 22 chiropractic treatments, an MRI, and three cortisone injections. Ms. Murray also maintains that her injury interfered with both her daily life and enjoyment of other activities such as her equestrian pursuits. In her written brief and during the hearing, Ms. Murray compared the facts of her case with a number of other SIRVA cases arguing that while the facts are similar, she should be awarded more because of the significant pain, suffering and emotional distress she endured. Br. at 17-20.

Although Respondent did not specifically discuss any comparable cases in his brief, he argued during the hearing that taking into account the overall amounts awarded to date in SPU SIRVA cases that are below the median amount of judgment ($60,000 to $90,000 range), and also taking into account the level of pain reported by Ms. Murray, the duration of her pain, how much physical therapy she received, Ms. Murray would fall at

5

the lower end of that spectrum. Respondent also argued that because there is an "overlay" of the sequelae of the injuries from her prior car accident with her SIRVA injury, the amount of compensation Petitioner should receive in this case should be discounted – thus making $50,000.00 appropriate.

In response, Petitioner argued that prior to receiving the vaccination at issue in this case, Ms. Murray had recovered "very well" from her previous motor vehicle accident and was horseback riding again. In contrast, after January 2016, she was no longer riding her horse and it was necessary to treat her shoulder over the course of the next year. By November 2016, Ms. Murray stated that she could no longer ride her horse.

After reviewing the record in this case and considering the parties' arguments during the hearing, I find that the complete record in this case supports the overall conclusion that at the time of vaccination, Ms. Murry was still experiencing and treating significant symptoms from her previous motor vehicle and horseback-riding accidents. Although it is uncontested that Ms. Murray suffered a SIRVA injury (and should therefore receive compensation for it – including some actual award of pain and suffering), not all of her pain and her symptomology appears to have been the result of the SIRVA injury. Her personal circumstances are thus distinguishable from the kind of petitioner whose injury occurs without any prior or recent ongoing medical problems, and is thus more disruptive to the injured party's life.

Another factor to consider in awarding an amount for pain and suffering is the loss of enjoyment of daily life activities. It is difficult for me to assess in this case whether Ms. Murray's activity of horseback riding was diminished or undercut due to her SIRVA injury, however, when it is evident that her previous accidents and associated injuries had already interfered with these activities. For these reasons, I cannot find that the SIRVA injury was itself sufficiently disruptive of her life activities to justify an award of the magnitude requested.

In addition, I note that Ms. Murray's SIRVA injury in this case was not particularly acute, in comparison to the amounts other petitioners have received. She attended less than 20 physical therapy sessions, and received no surgical intervention. I also note that Ms. Murray's shoulder pain was largely resolved within twelve months of vaccination as she admits in her affidavit. All of these factors will play a role in the amount awarded for Ms. Murray's pain and suffering. *See e.g. Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335, at *10 (Fed. Cl. Nov. 6, 2019).

Under such circumstances and considering the arguments presented by both parties at the hearing, a review of the cited cases, and based on the record as a whole, I find that **$65,000.00** in compensation for past pain and suffering is reasonable and appropriate in this case.

### c. Award for Past Unreimbursed Expenses

Ms. Murray requests $4,183.37 in past unreimbursable expenses. Brief at 9; Ex. 32. Respondent, however, proposes only reimbursing Petitioner a total of $489.96. For

the reasons set forth more fully in the transcript, Petitioner is awarded $2,130.08 for her past unreimbursable expenses, as follows:

### Unreimbursable Medical Expenses:

a. $200.00 (copay for MRI – uncontested)
b. $180.00 – (copays for physical therapy sessions – uncontested)
c. $40.00 – (copay to Dr. Wodicka – uncontested)
d. $1,605.00 – (50% of the amount requested for chiropractic treatment from Dr. Klionsky, based on the determination that the chiropractic treatment was also intended to treat Petitioner's preexisting injuries)
e. $105.08 for travel expenses (50% of disputed amount for the 22 visits to Dr. Klionsky ($75.13), for the aforementioned reason, plus the $29.95 that was not disputed by Respondent).

**Total: $2,130.08.**

The amounts requested for massage therapy ($311.40), the copay for the EMG ($30.00), and the mileage associated with the EMG ($1.12), for a total of $342.52 are denied. Petitioner has not established that these costs were reasonably associated with treatment of her SIRVA injury.

## VI.   CONCLUSION

In light of all of the above, the I award **Petitioner a lump sum payment of $67,130.08,** (representing $65,000.00 for Petitioner's actual pain and suffering and $2,130.08 for unreimbursable medical expenses) **in the form of a check payable to Petitioner, Alexandra Murray.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The clerk of the court is directed to enter judgment in accordance with this decision.[5]

**IT IS SO ORDERED.**

> s/Brian H. Corcoran
> Brian H. Corcoran
> Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.